# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ABULAY NIAN,

      Petitioner,

                               **Case No. 2:17-cv-313**

      v.                           **JUDGE JAMES L. GRAHAM**
                                      **Magistrate Judge King**

WARDEN, NORTH CENTRAL
CORRECTIONAL COMPLEX,

      Respondent.

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition* (ECF No. 1), Respondent's *Return of Writ* (ECF No. 6), Petitioner's *Reply* (ECF No. 7), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## Facts and Procedural History

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} At the time of these events, victim Jane Doe was 17 years old and lived with her Mother and two brothers in Delaware County, Ohio. To avoid disclosure of the identity of the sexual-assault victim and minor witnesses, the brothers will be referred to as John Doe and Richard Roe. John Doe is mentally disabled and requires the assistance of an "independent co-worker," a home health aide who helps him with independent living skills. Richard Roe was age 15.
>
> {¶ 3} On November 15, 2014, Mother, the three children, and appellant were in the home. Appellant had worked with the family for approximately two weeks as John Doe's home health aide. He was employed through an agency Mother found with the assistance of the Delaware County Disabilities Board. Appellant spent several hours with John Doe five days a week, helping him with chores and tasks of independent living such as laundry and cooking. During those two weeks, appellant and John Doe would often "hang out" in John Doe's bedroom, listening

to music. Jane Doe and Richard Roe would join them in listening to music or in going to a park to play basketball.

{¶ 4} On this date, appellant came downstairs and exited the house to retrieve his time sheet from his car. Mother and Richard Roe were in the downstairs living room. Mother signed off on the time sheet. Appellant went back upstairs and Mother assumed he was saying goodbye to John Doe.

{¶ 5} Jane Doe was in her bedroom watching Netflix when appellant knocked on her door. He came into her bedroom and asked for a hug. Jane agreed and stood to hug appellant. He tried to kiss her and put his hand on her "private area." Jane was wearing leggings and a sports bra. She testified appellant first put his hand on her vagina on top of the leggings. Appellant started kissing her neck and she asked him to stop. She said he stuck his hand inside the leggings and touched her vagina. She asked him to leave. Appellant then pulled the leggings down to her knees and placed his mouth on her vagina. Jane Doe described appellant gripping her thighs and said his mouth made contact with her genitals. Jane Doe pushed appellant's head away and appellant left the room.

{¶ 6} Mother observed appellant leave the house. Richard Roe went upstairs and discovered his sister "curled up in a ball" crying in her bedroom. She was FaceTiming with a friend and testified she told the friend and her brother what happened and asked what she should do. Richard Roe said Mother had to be told. He and Jane Doe told Mother what happened and she called the Delaware County Sheriff's Department immediately. Mother also called the agency which employed appellant and left a message instructing the agency not to permit appellant to return to their home.

{¶ 7} A deputy came to the house, took a report, collected the clothes Jane Doe had been wearing, and instructed her to go to Nationwide Children's Hospital for a sexual assault examination. A rape kit was collected at the hospital and submitted to B.C.I. for forensic analysis.

{¶ 8} A forensic biologist found amylase, a component of saliva, on the interior crotch of Jane Doe's leggings. A cutting from the area yielded a mixture of D.N.A.; Jane Doe was the major contributor and the comparison with appellant's D.N.A. was inconclusive. A swabbing of the area, however, also yielded a mixture of D.N.A., with Jane Doe as the major contributor and appellant included as the minor contributor.

{¶ 9} Appellant was charged by indictment with two counts of forcible rape pursuant to R.C. 2907.02(A)(2), both felonies of the first degree. Appellant entered pleas of not guilty and the case proceeded to trial by jury. Upon the close of appellee's evidence, appellant moved for acquittal upon Count I, forcible rape by digital penetration, pursuant to Crim.R. 29(A). The trial court sustained the

motion as to Count I, but overruled the motion as to Count II, forcible rape by cunnilingus.

{¶ 10} Appellant was found guilty upon Count II.

{¶ 11} On May 13, 2015, appellant filed a motion for new trial based upon jury misconduct. The motion was accompanied by an affidavit of a juror stating that during deliberations, another juror "introduced into the discussions facts about [appellant] being from Sierra Leone and having a prior record," facts allegedly obtained from newspaper accounts of the trial. Appellee responded with a motion in opposition.

{¶ 12} The trial court overruled the motion for new trial on June 3, 2015 and the matter proceeded to sentencing on June 15, 2015. The trial court imposed a prison term of 5 years and determined appellant to be a Tier III sex offender.

{¶ 13} Appellant now appeals from the trial court's June 16, 2015 judgment entry of conviction and sentence.

{¶ 14} Appellant raises nine assignments of error:

ASSIGNMENTS OF ERROR

{¶ 15} "I. APPELLANT'S CONVICTION IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AS A MATTER OF LAW."

{¶ 16} "II. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 17} "III. PROSECUTORIAL MISCONDUCT DENIED APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶ 18} "IV. APPELLANT WAS DENIED DUE PROCESS OF LAW THROUGH THE TRIAL COURT'S ERRONEOUS BELIEF THAT SENTENCING WAS MANDATORY."

{¶ 19} "V. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL AND IMPARTIAL PANEL OF JURORS AS GUARANTEED UNDER THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AS THE RESULT OF JURORS' IMPROPER CONSIDERATION OF EXTRANEOUS INFORMATION AND THE TRIAL COURT'S REFUSAL TO GRANT APPELLANT A NEW TRIAL."

{¶ 20} "VI. TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶ 21} "VII. THE COURT ERRED IN INSTRUCTING JURORS TO STRIKE INFORMATION THEY HAD HEARD FROM DEFENSE COUNSEL."

{¶ 22} "VIII. THE COURT ERRED IN INSTRUCTING JURORS WITH A CONCLUSORY STATEMENT THAT APPELLANT COMMITTED THE CRIME WITH WHICH HE WAS ACCUSED."

{¶ 23} "IX. THE CUMULATIVE EFFECT OF THE FOREGOING ERRORS DENIED APPELLANT A FAIR TRIAL."

*State v. Nian*, 10th Dist. No. 15CA070052, 2016 WL 4039205, at *1-2 (Ohio Ct. App. July 25, 2016). On July 25, 2016, the appellate court affirmed the judgment of the trial court. *Id.* On February 22, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Nian*, 148 Ohio St.3d 1411 (Ohio 2017).

On April 13, 2017, Petitioner filed this *pro se* habeas corpus *Petition*. He asserts that his conviction is against the manifest weight of the evidence and that the evidence is constitutionally insufficient to sustain his conviction (claim one); that he was denied a fair trial due to prosecutorial misconduct during closing argument (claim two); that he was denied the right to a fair and impartial jury (claim three); that he was denied the effective assistance of trial counsel (claim four); that the trial court erred in instructing jurors to disregard statements by defense counsel regarding Petitioner's citizenship and on the offense of rape (claims five and six). Respondent contends that Petitioner's claims are procedurally defaulted and without merit.

**Standard of Review**

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United

State Supreme Court has described the AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 19 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011) ); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) (The "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits a federal court's authority to issue a writ of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of

the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id.* at 748–49. The burden of satisfying the AEDPA's standards rests with the petitioner. *Cullen v. Pinholster,* 563 U.S.170, 181 (2011).

**Claim One**

In claim one, Petitioner asserts that his conviction is against the manifest weight of the evidence. This claim fails to offer a basis for relief. *See Taylor v. Warden, Lebanon Correctional Institution*, No. 2:16-cv-237, 2017 WL 1163858, at *10 (S.D. Ohio March 29, 2017) (citing *Williams v. Jenkins,* No. 1:15cv00567, 2016 WL 2583803, at *7 (N.D. Ohio Feb. 22, 2016) ) (citing *Nash v. Eberlin*, 258 F. App'x 761, 765, n. 4 (6th Cir. 2007) ); *Norton v. Sloan,* No. 1:16-cv-854, 2016 WL 525561, at *5 (N.D. Ohio Feb. 9, 2017) (citing *Ross v. Pineda,* No. 3:10-cv-391, 2011 WL 1337102, at *3 (S.D. Ohio)) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law.").

Under Ohio law, a claim that a verdict is against the manifest weight of the evidence – as opposed to one based upon insufficient evidence – requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility

of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983)*; cf. Tibbs v. Florida*, 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Petitioner also asserts that the evidence is constitutionally insufficient to sustain his conviction; Petitioner argues that the evidence adduced at trial did not establish that he touched the victim or used force, and that the DNA sample was inconclusive. The state appellate court rejected this claim as follows:

> Appellant argues his conviction upon one count of rape is against the manifest weight and sufficiency of the evidence. We disagree.
>
> . . . The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
>
> \*\*\*
>
> {¶ 28} Appellant was found guilty of one count of rape pursuant to R.C. 2907.02(A)(2), which states, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R .C. 2907.01(A) defines "sexual conduct" in pertinent part as \* \* \* cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." The trial court defined cunnilingus as "a sexual act committed with the mouth and the

female [sex] organ."1 As acknowledged by appellant in his brief, Jane Doe testified appellant's mouth made contact with her vagina. T. 155.

{¶ 29} Nonetheless, appellant argues the evidence of the act of cunnilingus as described by the victim at trial is insufficient to sustain his rape conviction because the conduct described does not rise to the level of "sexual conduct" pursuant to R.C. 2907.01(A); the testimony did not indicate whether the contact was "intentional" and there is no indication the act was committed for stimulation or sexual pleasure. We note the statutory definitions of "rape" and "sexual conduct" require no such elements, nor did the jury instruction upon the meaning of "cunnilingus," to which appellant did not object. We find the act described by the victim sufficiently describes an act of forcible cunnilingus. *See, State v. Dippel,* 10th Dist. Franklin No. 03AP–448, 2004–Ohio–4649.

. . . We note. . . the victim testified the act was committed after appellant had forcibly kissed her, pulled down her leggings, and held her in place with his hands "gripping" her thighs. It is well-established that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough*, 95 Ohio St.3d 227, 231, 2002–Ohio–2126, 767 N.E.2d 216.

{¶ 31} Appellant further argues the physical evidence does not support his conviction, but as appellee points out, amylase, an enzyme found in the highest concentrations of saliva, was found on the inner crotch area of the leggings. A swab from the same surface contained appellant's D.N.A. While the forensic expert could not testify the amylase specifically came from appellant because amylase does not contain D.N.A., it is circumstantial evidence that supports the victim's testimony. We are mindful, moreover, that "[c]orroboration of victim testimony in rape cases is not required." *State v. Meeks*, 5th Dist. No.2014CA00017, 2015–Ohio–1527, 34 N.E.3d 382, ¶ 81, appeal not allowed, 143 Ohio St.3d 1543, 2015–Ohio–4633, 40 N.E.3d 1180, citing *State v. Cuthbert*, 5th Dist. Delaware No. 11CAA070065, 2012–Ohio–4472, 2012 WL 4474720, ¶ 28 and *State v. Johnson*, 112 Ohio St.3d 210–217, 2006–Ohio–6404, 858 N.E.2d 1144, at ¶ 53.

{¶ 32} We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin,* 20 Ohio App .3d at 175. The jury neither lost its way nor created a miscarriage of justice in convicting appellant upon one count of rape. Appellant's first and second assignments of error are overruled.

*State v. Nian*, 2016 WL 4039205, at *3-5.

Before a criminal defendant can be convicted consistent with the United States

Constitution, there must be evidence sufficient to justify a reasonable trier of fact to find guilt

beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson,* at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume – even if it does not appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009), deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Second, and even if *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *See White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and for the reasons discussed by the state appellate court, Petitioner has not done so here.

Ohio law defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." O.R.C. § 2901.01(A)(1). The victim testified that Petitioner tried to kiss her, and touched her vagina against her wishes. He did not stop when she asked him to do so. *Transcript* (ECF No. 6-2, PAGEID # 552.) He pulled down her leggings,

gripping her thighs, touched her vagina and placed his mouth on her vagina. She pushed, or tried to push, his head away and asked him to leave, and then he got up and left. (PAGEID # 556-57.)

The state appellate court determined that this record established the use or threat of force as that term is defined under Ohio law. This Court is bound by the state court's interpretation of its own laws. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see Gumm v. Mitchell*, 775 F.3d 345, 362 (6th Cir. 2014) (citing *Estelle* 502 U.S. at 68) ("This Court should not reinterpret an issue of state law that has already been interpreted by the state courts); *Williams v. Smith*, No. 11–15163, 2014 WL 632437, at *5 (E.D. Mich. Feb.18, 2014) ("[O]n habeas review, '[s]tate law means what state courts say it means. A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254.'") (quoting *Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir.1991)). Further, the State did not need to introduce corroborating DNA evidence. The testimony of the victim, alone, provided constitutionally sufficient evidence to sustain Petitioner's conviction.

Construing all of the evidence in the light most favorable to the prosecution, and crediting the testimony of the victim, as this Court is required to do, the evidence is, for the reasons discussed by the state appellate court, constitutionally sufficient to sustain Petitioner's conviction.

Claim one is without merit.

**Claim Three**

In claim three, Petitioner asserts that the trial court improperly denied his motion for a new trial, because the jury improperly considered extraneous information in reaching its guilty verdict, and he was thereby denied his right to a fair and impartial jury. Respondent argues that

this claim presents an issue regarding the alleged violation of State law only, and therefore fails to provide a basis for relief.

This Court's review is limited to consideration of claims alleging a violation of "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on a "perceived error of state law" fall outside the scope of the Court's review and, therefore, do not constitute cognizable grounds for federal habeas relief. *See id.; see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting *Estelle v. McGuire,* 502 U.S. at 67-68) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Thus, to the extent that Petitioner asserts that the state courts erred or misapplied Ohio law in denying his motion for a new trial, this claim does not provide him the relief that he seeks. *See Mickens v. Richard,* No. 2:17-cv-00539, 2018 WL 1173037, at *2 (S.D. Ohio March 6, 2018) (citing *Pudelski v. Wilson*, 576 F.3d 595, 610-11 (6th Cir. 2009); *Chamblin v. Warden, Chillicothe Correctional Institution*, No. 1:15-cv-545, 2016 WL 8679076, at *12 (S.D. Ohio June 24, 2016); *Rigdon v. Ohio Adult Parole Authority*, No. 1:08-cv-716, 2010 WL 3910236, at *11 (S.D. Ohio July 7, 2010), *adopted*, 2010 WL 3910230 (S.D. Ohio Oct. 4, 2010)).

However, Petitioner asserts in this claim that he was denied his right to a fair and impartial jury. This issue presents a claim of federal constitutional dimension. *See Rodriguez v. Warden, Southern Ohio Correctional Facility*, 940 F.Supp.2d 704, 711-12 (S.D. Ohio 2013) (Petitioner's claim that the trial court abused its discretion and violated State law in denying a motion for a new trial does not provide a basis for relief, unless the trial court's decision was "so egregious" as to violate due process, but considering merits of his underlying claim of ineffective assistance of counsel) (citing *Pudelski*, 576 F.3d at 610-11). Nonetheless, Petitioner appears to

have waived this Court's review of this federal constitutional claim because he failed to present it to the state courts.

"To avoid procedural default, the petitioner must 'exhaust' all state-court remedies." *Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015) (citing *Carter v. Mitchell*, 693 F.3d 555, 563–64 (6th Cir. 2012)). This requires "fair presentation" of the federal claim to the state supreme court. *Id.* (citing *Bray v. Andrews*, 640 F.3d 731, 734–35 (6th Cir. 2011)); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). To fairly present a federal claim, a state prisoner must present the state courts with "both the legal and factual basis" for his claim. *Id.* (citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)).

In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each constitutional claim to the state courts as a federal constitutional claim. *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999), it is rooted in principles of federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment. In the Sixth Circuit, a petitioner can satisfy the fair presentment requirement in any one of four ways: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). General allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement. *Id.*

Petitioner asserted on direct appeal that he had been "denied his right to a fair and impartial panel of jurors as guaranteed under the Sixth Amendment of the United States Constitution. . . as the result of jurors' improper consideration of extraneous information and the trial court's refusal to grant [him] a new trial." *Brief on Behalf of Defendant-Appellant* (ECF No. 6-1, PAGEID # 149.) In support, he argued only that the trial court violated state law and should have resolved the issue by questioning other jurors on the issue. (PAGEID # 149-151.) Petitioner did not refer to any federal cases or to state cases relying on federal law in support. Rather, he argued in terms of state law only. In his appeal to the Ohio Supreme Court, Petitioner asserted that he "was denied the right to a fair trial when prejudicial extraneous evidence was presented to the jury during deliberations without the court's approval." *Memorandum in Support of Jurisdiction* (PAGEID # 201.) Again, he argued only that the trial court had violated state law and evidentiary rules, stating that the trial court had "abused its discretion" in denying his motion for a new trial. (PAGEID # 208-09.) Again, Petitioner did not refer to any federal cases, or to any state cases relying on federal law, in support of his claim.

Thus, Petitioner appears to have waived any federal claim for this Court's review. Moreover, the record does not reflect that this claim warrants relief. The trial court denied the motion for a new trial, as follows:

> The parties stipulated to the admissibility of a Columbus Dispatch article from November 22, 2014 which did not indicate the Defendant was not a citizen of the United States, but did say he had prior convictions.
>
> The defense attempted to elicit testimony from a juror, Jackie Cox, that more than one juror discussed his prior record and his citizenship. The Court sustained the

objection to her testimony under Evid.R. 606(B), finding that the newspaper article five months earlier was not outside evidence of influence on a juror. There was no due process argued that a juror lied during the voir dire process.

The Court permitted the defense to proffer the juror's testimony.

The juror supposedly remembered jury deliberations that disclosure took place of the defendant's prior record and citizenship.

The Court would note that defense counsel addressed citizenship in his opening and the Judge mentioned the issue during discussions after deliberations.

The Judge further mentioned that the Defendant may have a prior record after the deliberations were completed.

Motion denied.

*Judgment Entry Denying Motion For New Trial* (ECF No. 6-1, PAGEID # 116-117.)

The state appellate court affirmed the judgment of the trial court after rejecting this claim:

[A]ppellant argues juror misconduct required the trial court to grant appellant's motion for new trial. We disagree.

{¶ 47} The analysis of a case involving alleged juror misconduct requires a two-tier inquiry. First, it must be determined whether there was juror misconduct. Second, if juror misconduct is found, it must then be determined whether the misconduct materially affected appellant's substantial rights. *State v. Meeks*, supra, 2015–Ohio–1527 at ¶ 115, citing *State v. Taylor*, 73 Ohio App.3d 827, 833, 598 N.E.2d 818 (4th Dist.1991).

{¶ 48} The hearing in this case was conducted pursuant to Ohio Evid. R. 606(B), which states in pertinent part:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. * * * *.

{¶ 49} The trial court's decision that no juror misconduct occurred, and subsequent denial of a new trial, is not an abuse of discretion. In cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror. *Id*. at ¶ 117, citing *State v. Phillips*, 74 Ohio St .3d 72, 89, 656 N.E.2d 643, 661 (1995), and *United States v. Daniels*, 528 F.2d 705, 709–710 (C.A.6, 1976); *United States v. Williams*, 822 F.2d 1174, 1189 (C.A.D.C.1987); Annotation, 3 A.L.R.5th 963, 971, Section 2 (1992). A trial judge's determination of possible juror bias should be given great deference only upon the appellate court's satisfaction that the trial judge exercised sound discretion in determining whether juror bias existed and whether it could be cured. *Id.*, citing *State v. Gunnell*, 132 Ohio St.3d 442, 2012–Ohio–3236, 973 N.E.2d 243, ¶ 29. We are satisfied the trial court exercised sound discretion.

{¶ 50} Appellant failed to produce sufficient evidence of improper outside influence upon the jury. The existence of a newspaper article about the case is not sufficient evidence that an act of juror misconduct occurred.

{¶ 51} Appellant's [] assignment of error is overruled.

*State v. Nian,* 2016 WL 4039205, at *7.

Petitioner has failed to establish that the state appellate court unreasonably applied clearly established federal law as determined by the Supreme Court of the United States, or based its decision on an unreasonable determination of the facts in light of the evidence presented so as to warrant relief. 28 U.S.C. § 2254(d); *see Gatliff v. Tibbals*, No. 1:14-cv-931, 2015 WL 8481565, at *16 (S.D. Ohio Dec. 10, 2015) (noting that the Supreme Court has not held that application of the *aliunde* rule is unconstitutional and has unanimously upheld application of Fed. R. Evid. 606(b) to prohibit the use of a juror's testimony that another juror lied during *voir dire*) (citing *Warger v. Shauers*, — U.S. —, 135 S.Ct. 521 (2014)). Further, "[t]he Sixth Circuit has held that there is no 'constitutional impediment to enforcing' Ohio's *aliunde* rule." *Brakeall v. Warden*, 2011 WL 4712774, at *4 (S.D. Ohio Oct. 6, 2011) (citing *Hoffner v. Bradshaw*, 622 F.3d 487, 501 (6th Cir. 2010) (internal citations omitted)).

Claim three is without merit.

**Claims Five and Six**

In claim five, Petitioner asserts that he was denied a fair trial by reason of certain instructions given by the trial court to the jury. Petitioner specifically complains that the trial court improperly instructed the jury to disregard, because there was "no evidence of that so you strike that from consideration," *Transcript* (ECF No. 6-3, PAGEID # 819), defense counsel's indication, made in opening statement, that Petitioner had come to the United States when he was a teen. Petitioner also complains that the trial court improperly instructed the jury to disregard a statement regarding a particular text and what Petitioner may have thought: "Again, it's not evidence for your hearing." *Id.* Petitioner complains that these jury instructions unnecessarily emphasized that he was not a citizen of the United States. *Reply* (ECF No. 7, PAGEID # 1002.) In claim six, Petitioner asserts that the trial court improperly advised the jury, prior to the start of trial, that "Mr. Nian is charged with two counts of rape in that he engaged in sexual conduct with [name redacted] and purposely compelled her to submit by force or threat of force." *Transcript* (ECF No. 6-2, PAGEID # 434.) According to Petitioner, the trial court improperly indicated by the wording of this instruction that Petitioner had committed the charged crimes. The state appellate court rejected these claims, reasoning as follows:

> [A]ppellant argues the trial court should not have instructed the jury to disregard statements made by defense trial counsel regarding appellant's citizenship status. We disagree.
>
> {¶ 61} In opening statement, defense trial counsel stated appellant came to the U.S. from Sierra Leone. Further, in reference to texts between appellant and the victim after the rape, defense trial counsel stated appellant understood the victim referred to a "hug," prompting him to apologize, and he did not realize she alleged rape. When these comments were not supported by any evidence at trial, the trial court properly instructed the jury to disregard.
>
> {¶ 62} "[A] court's instructions to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings." *State v. Farringer*, 5th Dist. Fairfield No. 14–CA–43, 2015–Ohio–2644, ¶ 19, appeal not allowed, 144

16

Ohio St.3d 1440, 2015–Ohio–5468, 43 N.E.3d 451, citing *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981). A trial court does not abuse its discretion when it instructs the jury to disregard an issue raised by a defendant in opening statement when no evidence in support is presented at trial. *State v. Johnson*, 11th Dist. Ashtabula No.2001–A–0043, 2002–Ohio–6570, ¶ 27.

{¶ 63} Appellant's [] assignment of error is overruled.

\*\*\*

[A]ppellant summarily argues the trial court erred in allegedly making a conclusory statement regarding appellant's guilt during jury instructions. We disagree.

{¶ 65} We have reviewed the cited comment and disagree with appellant's characterization of it as a conclusory statement of appellant's guilt. The trial court merely informed the jury of the allegations contained in the indictment during preliminary jury instructions. The description of the conduct does not constitute a comment on appellant's guilt or innocence.

*State v. Nian*, 2016 WL 4039205, at *8-9.

Errors in jury instructions are generally not cognizable in federal habeas corpus unless they deprive the petitioner of a fundamentally fair trial. *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see also Wood v. Marshall*, 790 F.2d 548, 551–52 (6th Cir. 1986); *Thomas v. Arn*, 704 F.2d 865, 868–69 (6th Cir. 1983).

Because jury instruction errors typically are matters of state law, the standard for demonstrating that a jury instruction caused constitutional error in a habeas proceeding "is even greater than the showing required to establish plain error on direct appeal." *Henderson*, 431 U.S. at 154, 97 S. Ct. 1730. A habeas petitioner's "burden is especially heavy [when] no [affirmatively] erroneous instruction was given. . . . An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155, 97 S. Ct. 1730.

*Stallings v. Bagley*, 561 F. Supp. 2d 821, 855 (N.D. Ohio 2008). A habeas petitioner challenging jury instructions must establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The record fails to reflect such circumstances here.

Claims five and six are without merit.

**Claims Two and Four: Procedural Default**

Respondent contends that Petitioner has procedurally defaulted claims two and four. Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971) ). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This obligation "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way

that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim has been waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to

comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause sufficient to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, however, a claim of ineffective assistance of counsel generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Id.* at 452 (quoting *Murray,* 477 U.S. at 479). Put another way, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if the claim of ineffective assistance of counsel is itself procedurally defaulted, a petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards*, 529 U.S. at 450–51.

If, after considering all four factors of the *Maupin* test, a court concludes that a procedural default has occurred, the court must not consider the merits of the procedurally defaulted claim unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray*, 477 U.S. at 495–96).

**Claim Two**

In claim two, Petitioner asserts that he was denied a fair trial because the prosecutor mischaracterized evidence during closing argument. The state appellate court reviewed this claim for plain error only, due to Petitioner's failure to object at trial:

> [A]ppellant argues he was deprived of a fair trial by numerous instances of prosecutorial misconduct. We disagree.

{¶ 34} The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990), *cert. denied*, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived appellant of a fair trial based on the entire record. *Lott, supra*, 51 Ohio St.3d at 166, 555 N.E.2d 293.

{¶ 35} Appellant cites a number of instances of alleged prosecutorial misconduct throughout the trial. We note appellant did not object to any of these comments at trial. If trial counsel fails to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived, absent plain error. *State v. White,* 82 Ohio St.3d 16, 22, 1998–Ohio–363, 693 N.E.2d 772 (1998), citing *State v. Slagle,* 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992).

{¶ 36} We therefore review appellant's allegations under the plain-error standard. Pursuant to Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn*, 5th Dist. No.2008–CA–00137, 2009–Ohio–1688, citing *State v. Morales*, 10 Dist. Nos. 03–AP–318, 03–AP–319, 2004–Ohio–3391, at ¶ 19. The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 37} Appellant asserts the prosecutor mischaracterized the victim's testimony in closing argument but we disagree. In closing argument, a prosecutor may comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Young*, 5th Dist. Richland No. 14CA25, 2015–Ohio–2075, ¶ 25, citing *Lott, supra,* 51 Ohio St.3d at 165. The summary of the victim's testimony cited here is a fair comment on the evidence.

\*\*\*

{¶ 40} Appellant summarily argues the prosecutor committed several other acts of misconduct but upon our review of the record, we disagree that the statements were improper, much less that "absent the prosecutor's comments, the jury would not have found defendant guilty." *State v. Clay,* 181 Ohio App.3d 563, 2009–

Ohio–1235, 910 N.E.2d 14 at ¶ 49 (8th Dist.), citing *State v. Smith*, 14 Ohio St.3d 13, 470 N.E.2d 883 (1984).

{¶ 41} Appellant has not demonstrated any improper conduct by the prosecutor, much less any that rises to the level of plain error.

*State v. Nian*, 2016 WL 4039205, at *5-6.

As the state appellate court noted, Petitioner did not raise his claim of prosecutorial misconduct before the trial court. As a result, Petitioner waived this claim for review in these proceedings and the state court's plain error review of this claim does not constitute a waiver of the state's procedural default rules. *See Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).

Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir.2004), *cert. denied*, 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith*, 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Stojetz v. Ishee*, 2006 WL 328155 *12 (S.D. Ohio Feb.10, 2006).

A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams*, 380 F.3d at 968; *Hinkle*, 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle,* 271 F.3d at 244 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Adams v. Bradshaw*, 484 F.Supp.2d 753, 771 (N.D. Ohio 2007).

Petitioner may still secure review of the merits of this claim if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the alleged constitutional violation. *See Coleman*, 501 U.S. at 753. As cause for his procedural default, Petitioner notes that he is a *pro se,* incarcerated prisoner, that English is his second language, and that he has a hard time understanding legal terminology. Petitioner also asserts that his trial

attorney performed in a constitutionally ineffective manner by failing to object at trial, and that his appellate counsel improperly failed to raise this claim on direct appeal. *Reply* (ECF No. 7, PAGEID # 999.)

"[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)) (internal citation omitted).

> " 'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [;]. . . some objective factor external to the defense [that] impeded . . .efforts to comply with the State's procedural rule."

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003) (quoting *Coleman,* 501 U.S. at 753). Courts have held repeatedly that a petitioner's *pro se,* incarcerated status, limited access to the prison law library, or ignorance of the law and state procedural requirements do not constitute cause sufficient to excuse a procedural default. *See, e.g., Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (citing *Hannah v. Conley*, 49 F.3d 1193, 1197 (6th Cir. 1995)); *Crosby v. Warden, London Correctional Facility*, No. 1:12–cv–523, 2013 WL 5963136, at *5 n. 2 (S.D. Ohio Nov. 7, 2013). Similarly, "language barriers and unfamiliarity with the legal system are not external factors sufficient to excuse procedural default." *Cruz-Altunar v. Warden, Ross Correctional Inst*., No. 2:14-cv-08144, 2016 WL 1449848, at *1 (S.D. Ohio April 13, 2016) (quoting *Sanchez v. Hetzel*, No. 1:11-cv-940-TMH, 2014 WL 1491178, at *4 (M.D. Ala. April 15, 2014) (citing *Vazquez v. Lockhart*, 867 F.2d 1056, 1058 (8th Cir. 1988)) (*pro se* status and language barrier are insufficient to excuse procedural default); *Bonilla,* 370 F.3d at 498 ("unfamiliarity with the English language" is not "external to [one's] defense") (other citations omitted).

As noted *supra*, the constitutionally ineffective assistance of counsel may also constitute cause for a procedural default, so long as such claim has been presented to the state courts and is

not, itself, procedurally defaulted. *See Edwards,* 529 U.S. at 451-52 (citing *Murray,* 477 U.S. at 488–89). Petitioner asserts the ineffective assistance of counsel in his in habeas corpus claim four.

**Claim Four**

In his claim four, Petitioner asserts the denial of the effective assistance of trial counsel because his attorney failed to object to the characterization of the alleged victim as a victim; failed to object to the prosecutor's phrasing of a question indicating that the sexual assault had taken place; failed to object to the relevancy of evidence that the mother had a working relationship with the Petitioner; and failed to object to comments, made on opening statement, regarding his citizenship. Petitioner waived these claims by failing to raise them on direct appeal, where he was represented by new counsel, or in his appeal to the Ohio Supreme Court, where he argued only that he was denied the effective assistance of trial counsel because his attorney failed to object to mandatory sentencing, and because his attorney raised the issue of Petitioner's citizenship during *voir dire.*[1] *See Memorandum in Support of Jurisdiction* (ECF No. 6-1, PAGEID # 210-11.)

Having failed to properly present his current claim of ineffective assistance of trial counsel to the state courts, Petitioner may now no longer present these claims to the state courts by virtue of Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of res judicata.).

---

[1] Petitioner argued on direct appeal that he had been denied the effective assistance of trial counsel because his attorney failed to object to mandatory prison terms and due to his attorney's comments during *voir dire* and opening statement regarding his immigrant status and understanding of texts from the alleged victim. *See State v. Nian*, 2016 WL 4039205, at *8.

Moreover, the state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman,* 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id*. at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour,* 224 F.3d at 555; *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, this Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law.

Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Moreover, the denial of the effective assistance of appellate counsel cannot constitute cause for this procedural default, because Petitioner has never presented this claim to the state courts. *See Murray*, 477 U.S. at 489.

Thus, Petitioner has failed to establish cause for his procedural default of claims two and four. He has thereby waived these claims for review in these proceedings.

**Actual Innocence**

Petitioner also asserts that he is actually innocent. The United States Supreme Court has held that a claim of actual innocence may be sufficient "to avoid a procedural bar to the consideration of the merits of [a petitioner's] constitutional claims." *Schlup v. Delo,* 513 U.S. 298, 326–27 (1995). "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray*, 477 U.S. at 496. In *Schlup*, the Supreme Court held that a credible showing of actual innocence was sufficient to authorize a federal court in reaching the merits of an otherwise procedurally-barred habeas petition. *Id*. at 317. However, a claim of actual innocence is " 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.' " *Id*. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The actual innocence exception to a procedural default allows a petitioner to pursue his constitutional claims if it is "more likely than not" that new evidence – *i.e.*, evidence not previously presented at trial – would allow no reasonable juror to find him guilty beyond a

reasonable doubt. *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). The Court of Appeals for the

Sixth Circuit explained this exception as follows:

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter*, 395 F.3d at 589–90 (footnote omitted). Petitioner does not meet these standards here.

After an independent review of the record, the Court does not deem this to be so extraordinary a

case as to relieve petitioner of his procedural default of claims two and four.

**Recommended Disposition**

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be

**DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen

days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s). A judge of this Court shall make a *de novo* determination of those

portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


         *s/ Norah McCann King*
Norah McCann King
United States Magistrate Judge

August 16, 2018